IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SARAH JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | 1:04-CV-00725-B |
| ) | [WO] |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denials of applications for disability insurance benefits under Title II of the Social Security Act , 42 U.S.C. §§ 401 *et seq*., and supplemental security income under Title XVI, 42 U.S.C. §§ 1381 *et seq*., Sarah Jones ("Jones") received a requested hearing, represented by counsel, before an administrative law judge ("ALJ"), who rendered an unfavorable decision on November 21, 2003. After concluding that newly submitted evidence did not warrant remand, the Appeals Council rejected review; thus, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). This judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c). After careful scrutiny of the record and briefs, the court concludes that the Commissioner's decision should be affirmed.

## I.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.    The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). The Commissioner's decision must be considered conclusive "if it is supported by substantial evidence and the correct legal standards were

applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is less than a preponderance; instead, it is considered such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Because substantial evidence is "more than a scintilla," *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987), it "must do more than merely create a suspicion of the existence of the fact to be established." *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). A decision is not based on substantial evidence if it focuses on one aspect of the evidence while disregarding the contrary evidence. *McCruter v. Bowen*, 791 F. 2d 1544, 1548 (11th Cir. 1986). The court must examine the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). The case may be remanded to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences.[1] In deciding whether the Commissioner erred in denying

---

[1] A sentence four remand requires a finding that the Commissioner's decision either is not supported by substantial evidence or reflects an incorrect application of the relevant law. Sentence six of 42 U.S.C. § 405 (g) authorizes the court to order "additional evidence to be taken before the Commissioner ... upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

review of the ALJ's decision, the court also must consider additional evidence considered and made a part of the record by the Appeals Council in denying requested review. The Appeals Council will review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions are not supported by substantial evidence. 20 C.F.R. § 416.1470; *see also, Parker v. Bowen*, 788 F.2d 1512, 1518 (11th Cir. 1986) (*en banc*). The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. *Parker*, 788 F. 2d at 1520.

## II. ADMINISTRATIVE FINDINGS

Born in 1969, Jones has not engaged in substantial gainful work since July 16, 2001, the alleged onset date of disability. She has a high school education in special education courses with work experience as a sewing machine operator, a poultry worker and a material handler. She alleged disability due to "nerves" and "medication."[2]

The ALJ determined that Jones suffers these severe impairments: major depressive disorder with psychotic symptoms and some anxiety symptoms, history of pre-eclampsia; posttraumatic stress disorder; and likely average to borderline intellectual functioning. He concluded, however, that her "severe and not severe impairments considered singularly and in combination, are not of listing-level severity" and he deemed "not credible" her allegations of disabling pain and functional limitations. The ALJ determined that Jones has the residual functional capacity ("RFC") to perform a significant though not a full range of very heavy work – including her past relevant work and other jobs existing in significant numbers in the national economy. Accordingly, the ALJ did not find

---

[2] R. 18; Ex. 1E.

Jones disabled within the meaning of the Social Security Act.[3]

### III.  ISSUES

Jones specifies five issues for judicial review:

(1) whether the ALJ erred by failing to address the severity of [her] restrictive lung disease, metatarsalgia, and peptic ulcer disease;

(2) whether the ALJ committed reversible error by failing to obtain medical records from Dr. Boyer, a treating physician;

(3) whether the new evidence submitted to the Appeals Council warrants remand;

(4) whether the ALJ failed to consider [her] treatment in regard to her ability to work on a regular and continuing basis; and

(5) whether the ALJ failed to properly evaluate the opinion of Dr. McKeown [a psychological consultative examiner].[4]

### IV.  DISCUSSION

#### A.  Severity Evaluation for Alleged Physical Impairments

Challenging the consideration of her severe impairments, Jones contends that "the ALJ did not evaluate any physical impairment" despite records from Dr. Simmons that "prove...[she] has been diagnosed with ... restrictive lung disease, metatarsalgia, and peptic ulcer."[5]  The Commissioner responds that these "highly illegible" records are  "difficult to decipher" but assuming the diagnoses have been attributed properly to  Dr. Simmons, Jones "does not allege, nor

---

[3] R. 18, 23, 25-27. The ALJ's disability analysis followed the  five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920 and summarized in *Davis v. Shalala*, 985 F. 2d 528, 532 (11th Cir. 1993).

[4] Plaintiff's Brief at 1-2 ("*Pl.'s Br.*")(Doc. 11, Dec. 12, 2004).

[5] *See Pl.'s Br.* at 5, citing R. 115-16, 119-121, 125-126.

is there any evidence in the record, to suggest that any of these alleged diagnoses affected [her] abilities to do basic work activities." Thus, the Commissioner argues that Jones "has not met her burden ...to demonstrate that her impairment or combination of impairments is 'not so slight and its effect is not so minimal'".[6]

While "a diagnosis alone is an insufficient basis for a finding that an impairment is severe,"[7] the Commissioner's response misapprehends the thrust of Jones' contention:

> The issue in this case is **not** whether [her] impairments are actually severe. . . . While the ALJ could have found that [Jones] did not meet her burden of demonstrating that her restrictive lung disease, metatarsalgia, and peptic ulcer disease were severe impairments, his failure to discuss whether [Jones] met her burden and determine whether these impairments were severe or non-severe is reversible error.[8]

Jones describes correctly the ALJ's duty to discuss the severity of all impairments evidenced on the record and "to make clear the weight accorded to the various testimony considered"[9]; thus, the court now examines the evidentiary record to assess the ALJ's satisfaction of his obligation.

The record supports the Commissioner's contention that Jones "did not allege any physical impairments in her application for benefits..., or at the hearing before the ALJ..., nor did her attorney

---

[6]  Memorandum In Support Of The Commissioner's Decision at 5-6 ("*Def.'s Br.*") (Doc. 14, filed Feb. 15, 2005).

[7]  *Def.'s Br.* at 6.

[8]  *Pl.'s Reply Br.* at 1 (emphasis in original).

[9]  *See Cowart v. Schweiker*, 662 F. 2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached tht decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."); *see also Bowen v. Heckler,* 748 F. 2d 629, 635 (11th Cir. 1984) ("It is the duty of the [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.").

ever inquire of [Jones] at the hearing regarding her alleged physical impairments."[10] Jones alleged on a Disability Report dated September 17, 2001 that "the medication they have [her] taking-nerves"limits her ability to work.  On the Alabama DDS Supplement to Disability Report, Jones alleged that "nerves" keep her from working.  When asked at the hearing on February 5, 2003, why she is unable to work, Jones responded that "[she] is tired all the time and weak and depressed and [she] just can't do it."  During her March 26, 2003 psychiatric evaluation by Dr. Shakir Meghani, Jones reported no physical ailments except her history of pre-eclampsia.[11]

Scrutiny of the medical records for Jones' treatment from Dr. John F. Simmons between February 12, 1996 and October 16, 2001, and between March 13, 2002 and April 4,2002 confirms the Commissioner's reported difficulty in deciphering his diagnoses of Jones' physical impairments. Notes from his office examinations do indicate clearly Jones' chief complaints, however, none relate to lung disease or peptic ulcer disease[12] while only one references metatarsalgia.[13] Of critical

---

[10]  *Def.'s Br.* at 6. (internal citations omitted).

[11]  R. 53, 66, 217, 178.

[12]  On October 16, 2001, Dr. Simmons recorded as follows Jones' chief complaint: "HA(L) side of forehead → temple area - also (L) side neck pain - "head cold" - onset 10/13/01."; also referenced is Jones' 1996 history of "2 gastric ulcers",  and an ambiguous reference to "severe restriction" is clarified by a breathing test administered to Jones on July 11, 2001, which also indicated in the "comments" section, "bronchitis, sinusitis, decreased air flow ha, coarse rales." (R.115, 125). For Jones' "historical data update" completed on September 24, 2001, Dr. Simmons cited her April 1998 bout with pneumonia and a urinary tract infection. (R.117). Notes of Jones' reported history on treatment records dated April 6, 2000 (R.119),  February 2, 2000 (R.120), and January 5, 2000 (R.121)  reflect, *inter alia,* respectively  *"PUD Hx*", *"PUD",* and *"Hx gastric ulcer"* but nothing indicated otherwise on these records state clearly either Jones' continuing complaints with, or Dr. Simmons' evaluation that she suffered then, a peptic ulcer disease.

[13]  *Metatarsalgia* is pain in the forefoot in the region of the heads of the five bones located between the instep and the toes. *Stedman's Medical Dictionary* 1102 (27th ed. 2000). At her October 10, 2001 exam, Dr. Simmons recorded Jones' complaint of "(L) 5th toe hurts - swollen - 'can't wear shoes" and listed *"metatarsalgia"* along with *"depression"* and
(continued...)

importance is the fact that Dr. Simmons never included these physical ailments in his reported diagnoses to SSA.[14] The ALJ reported accurately her "primary complaints" to Dr. Simmons – "stress, depression, crying, and being unable to sleep" – as well as the doctor's unambiguously stated diagnosis of depression and insomnia.[15] In sum, the record amply supports a finding that Jones failed to put the ALJ on notice that she suffered restrictive lung disease, metatarsalgia and peptic ulcer disease in a manner sufficient to trigger his duty to discuss them as impairments and to make determinations on the severity of each, separately and in combination with other alleged impairments.[16]

---

[13]  (...continued)
*"insomnia"* in his assessment (A) notes.

[14]  On the DDS form signed October 17, 2001, Dr. Simmons stated no physical findings or diagnoses, assessed Jones as "capable of handling her own affairs", and referred only her "history of depression but no objective findings to support impairment of functioning." (R.113).

[15]  R. 22, 25. Buttressing the propriety of his step-two focus on Jones' alleged mental impairments - duly documented clearly in Dr. Simmons' records – the ALJ also noted Jones' similar focus in that she reported during the January 2, 2002 consultative psychological evaluation conducted by Dr. Doug McKeown that she has "no specific health problems or difficulties" and that she "is not receiving any treatment for medical problems" R. 19, citing Exhibit 4F (R. 134-35).

[16]  *See* 20 C.F.R. §404.1512(a)("In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled."); *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001)(substantial evidence supports ALJ's finding of no disability despite ALJ's failure "to discuss [claimant's] complaints of chronic back pain, [where] there is scant medical evidence to support the complaint...[and the claimant] did not indicate at the hearing that his claims of disability were premised on back pain or that he had functional limitations therefrom."); *Street v. Barnhart*, No. 04-15077, 2005 U.S. App. LEXIS 8938, **15-**18 (11th Cir. May 18, 2005)(finding no error in ALJ's failure to discuss severity of diagnosed mental impairment where claimant, represented by counsel, failed to list any mental impairment in his application for benefits, nor did he testify at the hearing that he suffered from any mental impairments that would prevent him from working and finding that claimant's own failure alone could have disposed of his claim) (citing *Pena v. Chater*, 76 F.
(continued...)

**B.     Failure to Secure Medical Records**

Notwithstanding the ALJ's duty to develop the record fully and fairly, the claimant's burden of proving her disability requires that she produce the substantiating evidence.[17] The ALJ must develop the claimant's "complete medical history for at least the 12 months preceding the month in which [she] files [her] application unless there is a reason to believe that development of an earlier

---

[16]   (...continued)
3d 906 (8th Cir. 1996)); *Pena*, 76 F. 3d at 909 ("The administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.")(internal quotations and citations omitted); *Cf. Gibson v. Heckler*, 779 F. 2d 619, 622 (11th Cir. 1986)(ALJ committed reversible error by failing to consider each impairment alleged and to state the weight accorded each item of impairment evidence and the reasons for his decisions on such evidence) *and Ashford v. Barnhart,* 347 F. Supp. 2d 1189, 1193-94 (M.D. Ala. 2004)( though claimant alleged that she suffered from bipolar disorder, ALJ committed reversible error in his failure to accept that she was diagnosed with bipolar disorder, to address the severity of the disorder, or to explain how and why the weight of the evidence would not support a finding that the disorder was a severe impairment) *and Williams v. Barnhart*, 186 F. Supp. 2d 1192, 1196-98 (M.D. Ala. 2002) (ALJ required to assess the severity of all of the claimant's alleged impairments).

[17]   *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995); *Cowart v. Schweiker*, 662 F.2d 731, 735-736 (11th Cir. 1981) (describing the ALJ's duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts").

*See* 20 C.F.R. §404.1512 (a):
   *In general*, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.
*and*

20 C.F.R. §404.1512(c)
   *Your responsibility*. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your case.

8

period is necessary or unless [the claimant] say[s] that [her] disability began less than 12 months before [the filing of her] application. 20 C.F.R. §404.1512(d); *see also Ellison v. Barnhart*, 355 F. 3d 1272 (11th Cir. 2003).  If the claimant says that her disability began less than 12 months before she filed her application, the ALJ must develop her complete medical history beginning with the month she says her disability began unless he has reason to believe that her disability began earlier. 20 C.F.R. §1512(d)(2).  Courts evaluating the necessity for remand to obtain additional records "are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F. 3d at 935  (internal quotations omitted).

Guided by these standards, the court readily rejects the contention by Jones  that the ALJ committed reversible error by failing  to order medical records from Dr. Boyer, a treating physician. Represented in the administrative process by counsel, Jones  offers no explanation for her own failure to submit Dr. Boyer's 2001 or other relevant records for her treatment.   Nor does she demonstrate the necessity of remand due to  unfair prejudice resulting from the ALJ's  failure to obtain these records.  While "[t]he lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits," this:

> do[es] not mean that a remand is warranted any time a claimant alleges that the ALJ neglected to complete the record.  The likelihood of unfair prejudice to a claimant may arise, however, where...the evidentiary gap involves recent medical treatment which the claimant contends supports her allegations of disability, or the receipt of vocational services.

*Brown*, 44 F. 3d at 936,  n. 9.

The record did not document Dr. Boyer's  treatment of Jones for approximately a month in 2001,[18] but it did include substantial evidence relevant to the subsequent status of her mental health

---

[18]    On a Disability Report dated September 17, 2001, Jones identified Dr. Boyer as her treating
(continued...)

and resulting functional limitations: the diagnosis and treatment by her physician, Dr. Simmons, for depression; the diagnosis and treatment by her licensed professional counselor, Rose M. Blakey-Philips, for depression, posttraumatic distress syndrome, panic and anxiety disorder and social phobia; a consultative psychological examination by Dr. Doug McKeown in January 2002; a consultative psychiatric examination by Dr. Shakir Meghani in March 2003; and Psychiatric Review Technique form and accompanying Mental Residual Functioning Capacity Assessment completed in January 2002 and reviewed in February 2002 by State Agency psychological consultants.[19] Additionally, the ALJ found that the medical evidence indicated *major depressive disorder with psychotic symptoms and some anxiety symptoms*; *post traumatic distress disorder*; and *likely average to borderline intellectual functioning* as severe impairments for Jones, and his formulation of her RFC considered these impairments and their limitations.[20] In sum, the record in its entirety does not disclose the type of evidentiary gap in the mental health treatment records which dictates remand in order to obtain and evaluate the records in controversy.

### C.     Consideration of Treatment Needs on Abiity to Work

At step five of the sequential evaluation process, Jones notes, only the ability to work on a full time basis will permit the ALJ to render a decision of not disabled; because she continued weekly sessions with her counselor and "the regular hours of most medical/psychological establishments being 8am-5pm", Jones contends that remand is dictated for the ALJ's failure to

---

[18]   (...continued)
physician who prescribed Paxil and Risperdal for her "problems commenting with others, can't sleep or eat or sleep to [sic] much and more." (R. 55).

[19]   R. 113, 115-116, 118, 132-183.

[20]   R. 23-25, 27.

evaluate her ability to work "on a regular and continuing basis."[21] The Commissioner responds that most " medical/psychological establishments...offer evening and weekend hours" and Jones' failure to present this issue to the ALJ "suggests...that [her counselor's] schedule is not so rigid and inflexible as to not accommodate [her]." Assuming *arguendo* that "all the jobs, past relevant work and others, for which the vocational expert opined [Jones] could perform, are only performed during the hours of 8:00 a.m. to 5:00 p.m.", the Commissioner contends that her "need to attend counseling on a weekly basis could be accommodated by an equivalent work schedule."[22]

Even if her treatment needs an be accommodated by an equivalent work schedule, Jones argues that " vocational expert testimony would be required to ensure that the jobs suggested by the ALJ would offer such an accommodating work schedule", and, accordingly, the ALJ posed an incomplete hypothetical question to the vocational expert because it failed to incorporate her "frequent need for treatment."[23]

Jones characterizes the ALJ's alleged failure to consider her need for treatment as a step five error. Indisputable, however, is the ALJ's *step four* finding of *no disability* based upon Jones' ability to perform her past relevant work.[24] Though the ALJ did proceed to step five to determine if Jones could perform other work, he was not required to do so.[25] Nonetheless, since the claimed

---

[21] *Pl.'s Br.* at 12-13, *quoting Kelley v. Apfel*, 185 F. 3d 1211, 1214-15 (11th Cir. 1999).

[22] *Def.'s Br.* at 11.

[23] *Pl.'s Reply Br.* at 8.

[24] R. 25-27.

[25] *See* 20 C.F.R. §1520(a)(4)(iv)("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled."). Because the ALJ made a step-four finding of no disability in light of Jones' ability to do her past relevant work, the ALJ was
(continued...)

error underscores the ALJ's duty at steps four and five to establish RFC by reference to all pertinent medical evidence, the court examines the contention and finds it lacking in sufficient evidentiary support. Despite the January 18, 2003 report indicating that Jones participates in weekly counseling sessions and testimony at the hearing that Jones "sees a counselor",[26] absent is any indication of the nature and the duration of any necessary counseling sessions, including any expectation of absences from work. Consequently, remand is not warranted.

### D.     Evaluation of Consultative Examiner's Opinions

Dr. Doug McKeown, a consultative clinical psychologist, rendered a comprehensive psychological evaluation of Jones with administration of the Wechsler Adult Intelligence Scale-III ("WAIS-III"). School records confirmed Jones' reported completion of high school in special education classes, and Dr. McKeown documented her additional reports that

> she does not work because she has trouble being around people. She stresses out easily. . . she gets depressed, sometimes she cries and she gets mad at people for no reason. She reports no specific health problems or difficulties and she currently is not receiving any treatment for medical problems. . . . she is currently seeing a counselor, Rose Blakey, and she saw a psychiatrist when she lived in Oklahoma because she stayed depressed a lot.[27]

Jones' WAIS-III scores – "a Verbal IQ of 64, Performance IQ of 63 and a Full Scale IQ of 61 – would place her in the mild range of mental retardation." Dr. McKeown diagnosed her, however, with "likely low average to borderline intellectual functioning", and explained:

---

[25]   (...continued)
not required to obtain vocational expert testimony. Testimony of a vocational expert is only required to determine a claimant's RFC where the claimant has proved she cannot return to her past relevant work. *See Lucas v. Sullivan*, 918 F. 2d 1567, 1573 n.2 (11th Cir. 1990).

[26]   R.97; R. 214.

[27]   R.134, Ex.4F

> I really feel that she has limited motivation for doing well on this particular assessment and that she does function at a much higher level than she demonstrates on this particular assessment. I really feel that the current assessment is a minimization of her functioning and that she functions at a much higher level. Her primary weaknesses measured at this time relate to her psychomotor speed, her numerical reasoning and her general comprehension. Overall, her past work history and her ability to provide a cogent history suggest that she functions at a much higher level.[28]

The ALJ gave "substantial weight" to this diagnosis by Dr. McKeown as well as his judgment that Jones "would be capable of maintaining some degree of gainful employment and ... no depressive symptoms that would fully debilitate her.[29] Jones specifies error in the ALJ's deference to "[t]he opinion of a one-time examiner." She contends that Dr. McKeown's opinion of her intelligence is not indicated by her past work history of only unskilled and repetitive jobs in textile factories. She also argues the consistency of her WAIS-III scores with other IQ tests placing her in the "mentally retarded classification of cognitive functioning" as well as her placement "in special education for twelve years."[30] Jones thus concludes that the ALJ should have informed his diagnosis by ordering additional testing since he "questioned the validity of the only IQ scores performed by an acceptable medical source."[31]

Contrary to Jones' assertion, the licensed professional counselor/psychometrist who administered other IQ tests does not qualify as an acceptable medical source under 20 C.F.R. §

---

[28] R. 135.

[29] R. 24. The ALJ made a step two determination that Jones suffers the severe impairment of " likely average to borderline intellectual functioning." R. 27.

[30] In November 2002, Dianne H. Coffey, a licensed professional counselor and school psychometrist administered the Stanford-Binet Intelligence Scale, the Woodcock Reading Mastery tests and the Kaufman Test of Educational Achievement. R. 99-102; 134.

[31] *Pl.'s Reply Br.* at 10.

404.1513.  *See Giles ex rel. Dowdell v. Barnhart*, 182 F. Supp. 2d 1195, 1198-99 (M.D. Ala. 2002) (ALJ entitled to give less weight to IQ tests administered by psychometrist who is not an acceptable medical source than to a test administered by a licensed psychologist during a consultative examination).

With respect to Jones' contention that Dr. McKeown's diagnosis is not supported by her past work history, the court readily concurs that "just because Mrs. Jones has worked in the past, does not indicate that she is functioning at low average intelligence." (*Pl.'s Reply Br.* at 10).  Similarly, though, Jones' past history alone presents no basis for a diagnosis of mental retardation.  As this court emphasized in a similar context,

> Taking issue with only one of these several evidentiary facts– his employment history as an unskilled farm laborer for twenty-two years – Stallworth argues, in reliance on *Durham v. Apfel,* 34 F.Supp.2d 1373 (N.D. Ga. 1998): "[t]his is precisely the sort of work history that is commensurate with mild mental retardation." [ ]. *This Court is reticent to embrace any opinion that a claimant's decades-long toil in farm labor, or any other kind of unskilled job – is symptomatic of mild mental retardation*, and close scrutiny of *Durham* reveals no justification for any such interpretation

*Stallworth v. Barnhart*, No. 2:03-cv-00619 (M.D. Ala. Feb. 5, 2004), *aff'd per curiam*, 125 Fed. Appx. 270 (11th Cir. 2004). (emphasis supplied)

Jones states correctly that the opinion of a one-time examiner like Dr. McKeown is not entitled to deference.  *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). On this evidentiary record, however, Dr. McKeown is the only acceptable medical source who rendered an opinion on Jones' intellectual functioning; his competence was not challenged; and his opinions are neither inconsistent with the record as a whole nor contradicted by another competent acceptable medical source. Consequently, presented no basis for discrediting his opinion, the ALJ made "a difficult

14

decision" to give it substantial weight.[32] *See Haag v. Barnhart*, 333 F. Supp. 2d 1210, 1216-1218 (N.D. Ala. 2004)(ALJ improperly rejected opinion of consulting physician who was the only competent medical source regarding how long the claimant's impairments could be expected to last).

The court finds no abuse of discretion in the ALJ's failure to secure another consultative examination of Jones' mental condition. An ALJ does commit "reversible error" if he declines "to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves v. Heckler*, 734 F. 2d 519, 522 n.1 (11th Cir. 1984); *see also* 20 C.F.R. §404.1517 ("If your medical sources cannot or will not give us sufficient medical about your impairment for us to determine whether you are disabled or blind, we may ask to have one or more physical or mental examinations or tests."). Jones' contention that the ALJ had insufficient information to make an informed decision rests solely on her exception to his refusal to diagnose her with mental retardation. The ALJ articulated the basis for reliance on Dr. McKeown's assessment, and absent a credible showing from Jones that this assessment alone could not ground an informed decision, the court concludes that it constitutes substantial evidence supporting the disability decision. *See Haywood v. Sullivan*, 888 F. 2d 1463, 1472 (5th Cir. 1989)("The ALJ not required to order consultative examinations unless the plaintiff meets the burden of raising the requisite suspicion that

---

[32] The ALJ explained:

> Candidly, this is a difficult decision to make. To my personal observation, the claimant in her manner of giving testimony, sounded sincere. Her counselor certainly sounded both very sincere and credible in her testimony. However, I cannot give controlling weight to Ms. Blakey- Phillips' oft expressed opinion that the claimant is "disabled.. .. Ms. Blakey-Phillips is not an acceptable medical source.. .. As an "other source," Ms. Blakey-Phillips' opinion is not a medical opinion and is not entitled to deference. Moreover, it is contradictory to the opinions of Dr. Meghani and Dr. McKeown, who are acceptable medical sources. (R.24).

the examination is necessary to discharge the ALJ's responsibility to conduct a full inquiry into the facts."); *see also Gholston v. Barnhart*, 347 F. Supp. 2d 1108, 1115 (M.D. Ala. 2003)(ALJ not required to order a consultative exam unless the record– medical and non-medical– establishes the necessity for such an exam).

### E. Consideration of New Evidence

The Appeals Council denied review of the ALJ's November 21, 2003 decision after reviewing and making a part of the record a January 30, 2004 physical residual functional capacity questionnaire completed by Jones' treating physician, Dr. Simmons.[33] Jones contends that the Appeals Council should have remanded this case for further consideration of this questionnaire "that proves [she] has 'Bipolar' disorder and Irritable Bowel Syndrome."[34]

Conceding that "the evidence is new in that it was not in existence at the time of the ALJ's decision", the Commissioner argues principally that it fails to satisfy both the *materiality* prong and the *good cause* prong of the three-pronged standard for remand articulated by the Eleventh Circuit. Upon analysis, this court agrees with the Commissioner's contention that this evidence does not satisfy the *materiality* prong.[35]

To secure a remand under sentence six of 42 U.S.C. § 405(g) for administrative consideration of new evidence, the claimant must establish that (1) there is *new, non-cumulative evidence*; (2) the evidence is *material* because it is relevant and probative so there is a reasonable

---

[33] R. 5-8.

[34] *Pl.'s Br.* at 10.

[35] Because failure to establish any one of the prongs precludes remand and because the court concludes that Jones cannot establish the materiality prong, the court does not address the good cause prong.

possibility that it would change the administrative result; and (3) there is *good cause* for failure to submit the evidence at the administrative level.  *Vega v. Commissioner of Social Security,* 265 F. 3d 1214 (11th Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998);  *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987);  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).  *Materiality* of the evidence requires "a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d at 459.  An additional implicit requirement of materiality is that the new evidence "relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. §416.1470(b).  Failure to establish any of these elements means that remand is not appropriate. *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987).

The court finds no reasonable possibility that the physical capacities evaluation would have changed the administrative outcome.   Jones contends that the evidence is material "because it provides evidence of mental and physical impairments that would place additional limitations on [her] ability to perform basic work activities."  With respect to Dr. Simmons' diagnosis of bipolar disorder, Jones contends that this diagnosis is "especially significant because it provides objective medical support for [her] subjective complaints of panic, anxiety and depression" and "[her] allegations of psychiatric functional restrictions."[36]  Because the physical capacities evaluation "includes a medical source opinion that [she] would likely be 'absent from work as a result of the impairments or treatment' about 'two days per month'", Jones argues that there is a reasonable possibility that this evidence would change the administrative outcome.[37]

While the evaluation indicates that her impairments are likely to produce "good days" and

---

[36]   *Pl.'s Br.* at 11.

[37]   *Pl.'s Reply Br.* at 6.

17

"bad days" which may result in "variable" absences from work– "about two days per month", [38] to the extent these limitations result from her mental impairment, these notations by a general medical practitioner are not likely to change the administrative outcome since the record before the ALJ already contained evaluations by acceptable medical sources who are specialists in the mental health field.[39] Regardless of any limitations established the evaluation, Dr. Simmons opined that Jones "could function at work...if properly trained and motivated"; she is able to tolerate only "moderate stress ok" because "she is not motivated to return to work".[40] Because Jones "has not worked in a while" Dr. Simmons noted that she "will need job training and ongoing med tx".[41]

With respect to the diagnosis of irritable bowel syndrome, the court agrees with the Commissioner's unchallenged[42] contention that "there is no mention of this diagnosis, or any limitation as a result of such diagnoses, in the record before the ALJ, nor at the ALJ hearing, it is reasonable to assume that this is a diagnosis outside of the time frame of the ALJ's decision."[43] Because Jones has not satisfied the materiality prong, remand is not warranted for consideration of this new evidence.

## V. CONCLUSION

---

[38] R. 202-03.

[39] *See* Psychological Evaluation, R. 134-37; Psychiatric Evaluation, R. 178-79; Medical Source Opinion Form (Mental), R. 180-81.

[40] R. 200.

[41] R. 203.

[42] Jones fails to address at all the Commissioner's contention regarding the diagnosis of irritable bowel syndrome. Review of both Jones' initial brief and her reply brief reveals that Jones provided no argument concerning how this diagnosis supports a finding that there is a reasonable possibility that it would change the administrative outcome.

[43] *Def.'s Br.* at 10.

Pursuant to the reasons detailed in this *Memorandum Opinion*, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**.   A separate Judgment will be entered.

Done this 13th day of December, 2005.

/s/ Delores R. Boyd
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE